UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| NOREEN CONNOLLY, <br><br> Plaintiff, <br><br> v. <br><br> OFFICER SULSKI UNIT CL 41 and <br> OFFICER STICKLE UNIT CL 48, <br><br> Defendants. | CAUSE NO.: 2:21-CV-5-TLS |

**OPINION AND ORDER**

This matter is before the Court on Defendants' Motion for Summary Judgment [ECF No. 51] and the Defendants' Motion for Summary Ruling on Motion for Summary Judgment [ECF No. 64]. The Plaintiff, who is proceeding pro se and was given notice of her obligations in responding to summary judgment, has not responded, and the time to do so has passed. For the reasons set forth below, the Court GRANTS the motions.

**PROCEDURAL BACKGROUND**

On July 14, 2020, the Plaintiff, Noreen Connolly, with counsel, filed a Complaint [ECF No. 3] in the Lake County, Indiana, Superior Court against the Defendants, Officer Stickle and Officer Sulski. The Plaintiff's claims arise out of events that occurred on July 15, 2018. Count I is a claim against both Defendants for illegal search and seizure in violation of the Fourth Amendment, alleging that she was seized without probable cause. Court II is a claim against both Defendants for excessive force in violation of the Fourth Amendment, alleging that she was slammed into the side of a vehicle causing her to hit her face and fall to the ground and that she was handcuffed too tightly. Both claims are brought pursuant to 42 U.S.C. § 1983.

The Defendants removed the case under the Court's federal question jurisdiction on January 7, 2021. ECF No. 1. On June 28, 2023, the Defendants filed a Notice that the Plaintiff had filed a bankruptcy petition on July 13, 2022. ECF No. 37. On August 10, 2023, Bankruptcy Trustee Christopher R. Schmidgall filed a Notice of Bankruptcy Filing and Automatic Stay, representing that he had not yet determined whether to continue this civil case. ECF No. 42. These proceedings were stayed on December 7, 2023. ECF No. 45. On November 25, 2024, Trustee Schmidgall filed a Status Report and a November 25, 2024 Notice of Intent to Abandon, ECF No. 49, and the Court lifted the stay on January 14, 2025, ECF No. 50.

On January 17, 2025, the Defendants filed the instant Motion for Summary Judgment. ECF No. 51. On April 29, 2025, the Court granted the Plaintiff's attorney's Motion to Withdraw Appearance and issued a Notice of Summary Judgment Motion, advising the pro se Plaintiff of her obligations in responding to the Motion for Summary Judgment. ECF Nos. 58, 59, 60. The Court's mailings to the Plaintiff were returned as undeliverable. ECF No. 61.

On May 23, 2025, the Court issued an Order updating the Plaintiff's mailing address, resetting the deadline for the Plaintiff to respond to June 25, 2025, and directing the Clerk of Court to mail to the Plaintiff's updated address the Court's Order, the Motion for Summary Judgment, the supporting Memorandum, and the Notice to Pro Se Litigant. ECF No. 62. A green return of service card dated May 27, 2025, and signed by Carla Short as the Plaintiff's agent was filed on June 3, 2025. ECF No. 63. On July 7, 2025, the Defendants filed the instant Motion for Summary Ruling. ECF No. 64.

## SUMMARY JUDGMENT STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). The movant may discharge this burden by "either: (1) showing that there is an absence of evidence supporting an essential element of the non-moving party's claim; or (2) presenting affirmative evidence that negates an essential element of the non-moving party's claim." *Hummel v. St. Joseph Cnty. Bd. of Comm'rs*, 817 F.3d 1010, 1016 (7th Cir. 2016) (citation omitted). In response, the non-movant "must make a sufficient showing on every element of his case on which he bears the burden of proof; if he fails to do so, there is no issue for trial." *Yeatts v. Zimmer Biomet Holdings, Inc.*, 940 F.3d 354, 358 (7th Cir. 2019) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). In ruling on a motion for summary judgment, a court must construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Id.* (citation omitted). A court's role "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994) (citations omitted).

As of the date of this ruling, the Plaintiff has not filed a response to either motion. "The court may rule on a motion summarily if an opposing party does not file a response before the deadline." N.D. Ind. L.R. 7-1(d)(5). While summary judgment is not granted by default, the Court accepts the movant's facts as undisputed and determines whether those facts entitle the movant to judgment as a matter of law. *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021).

**MATERIAL FACTS**

On August 2, 2018, the State of Indiana filed criminal charges against Plaintiff Noreen Connolly in Cause No. 45D08-1808-F6-00673 in the Lake County, Indiana, Superior Court, for the offenses of (1) Battery on a Law Enforcement Officer as a Level 6 Felony (Ind. Code § 35-

42-2-1); (2) Resisting Law Enforcement as a Class A Misdemeanor (Ind. Code § 35-44.1-3-1(a)(1), and (3) Disorderly Conduct as a Class B Misdemeanor (Ind. Code § 35-45-1-3(a)(1)). Ex. B, ECF No. 52-4; *see also* mycase.IN.gov. The Probable Cause Affidavit filed with the Information is signed by Officer Sulski and provides: "The accused came on scene where officers were dispatched. The accused has no business on scene and was told several times to leave. The accused refused and I escorted her off the property, at which time she turned around and pushed this officer." Ex. C, ECF No. 52-5. For the charge of Battery on a Law Enforcement Officer, Officer Sulski believed there was probable cause because "[t]he accused resisted this officer while being escorted off the property. The accused turned and pushed this officer away." *Id.* For the charge of Resisting Law Enforcement by forcibly resisting, forcibly obstructing, or forcibly interfering with a law enforcement officer, Officer Sulski believed there was probable cause because the Plaintiff "refus[ed] to leave the scene, after she was ordered to several times. The accused was then escorted from scene, at which time she turn[sic] and pushed this officer." *Id.* And for the charge of Disorderly Conduct "by engaging in tumultuous conduct," Officer Sulski believed there was probable cause because "the accused pushed away from this officer as she was being escorted from the property. The accused pushed this officer again as I tired[sic] to control her hands." *Id.* On August 3, 2018, a Lake County Judicial Officer determined that there was probable cause to believe the Plaintiff committed the crimes of the three charged offenses. Ex. D, ECF No. 52-6.

  The criminal case went to a jury trial on August 18, 2022. Ex. A, p. 1, ECF No. 52-3. At trial, Officer Sulski testified that, at the scene where an investigation was being conducted, he told the Plaintiff to leave and she refused. *Id.* 126:1–8. He asked her two or three more times to leave, and she responded that he would have to take her to jail. *Id.* 126:8–11. He then walked her

4

down the driveway "without even touching her and she kept backing in to my hand." *Id.* 126:11–15. He testified that, halfway down the driveway, she turned, swung at him, shouldered his right shoulder with her right shoulder, and passed him, at which point he and Officer Stickle each tried grabbing one of her hands. *Id.* 126:21–25, 129:3–12, 144:1–12, 146:7–147:4. The Plaintiff started flailing, "was going ballistic with her arms," got loose, and fell to the ground. *Id.* 126:25–127:4, 147:5–8. Officer Sulski described her demeanor as irritated, agitated, and wanting to fight. *Id.* 127:7–8. Officer Stickle testified that, after the Plaintiff "pushed away from Officer Sulski and started swinging her arms around," Officer Stickle "grabbed her left arm" and she "still continued to swing her arms, lost her balance and fell on the ground." *Id.* 165:17–23. When she stood back up, she was handcuffed and placed in Officer Sulski's patrol vehicle. *Id.* 127:10–17. The Plaintiff did not testify in the criminal trial. Ex. I, 77:6–12, ECF No. 52-11. The jury returned a verdict of guilty on the three charged offenses. Ex. A, 241:20–25; *see also* Ex. E, ECF No. 52-7.

The Plaintiff initiated this civil lawsuit on July 14, 2020. Compl., ECF No. 3; Ex. F, ECF No. 52-8. In her deposition in this civil case, the Plaintiff provided her version of the events. Ex. I. She testified that she was outside with her nephew's mother (Carly) and the officers. *Id.* 16:5–7; 48:3–4. The Plaintiff told Carly to "hit the record button on her phone" and was told by Officer Sulski to "shut up." *Id.* 48:15–17. The Plaintiff turned to leave, was walking away, and was about halfway down the driveway "when [she] was knocked into the truck that was parked there." *Id.* 49:1–3. After she "came to," she discovered she was on the ground and officers were on top of her. *Id.* 49:4–5. She was then handcuffed, picked up, placed in a police car, and taken to the Cedar Lake Police Department. *Id.* 49:6–10. She testified that, at the time of the fall, she felt "a force that came at [her]." *Id.* 69:24–70:1. She did not feel where on her body the force

5

made contact, she "just felt when the truck hit [her] face and hit the side of the truck." *Id.* 70:4–7. She testified that the statements in the probable cause affidavit that she "pushed away from this officer as she was being escorted from the property" and that she "pushed this officer again as [he] tried to control her hands" were not true. *Id.* 76:6–19. She testified that she did not push away from Officer Sulski or Officer Stickle and that she did not push away from any officers as they tried to control her hands. *Id.* 76:20–25. She also testified that the following events in the probable cause statement did not happen: that she "forcibly resisted, forcibly obstructed or interfered with Officer Sulski by refusing to leave the scene after she was ordered to several times" and she "was then escorted from the scene, at which time she turned and pushed" him. *Id.* 77:13–23.

On October 13, 2022, the state court sentenced the Plaintiff and entered judgment in the criminal case. *Indiana v. Connolly*, 45D08-1808-F6-000673.[1] The Plaintiff filed a Notice of Appeal on October 14, 2022 in *Connolly v. Indiana*, 22A-CR-02428, which was dismissed with prejudice by the Indiana Court of Appeals on June 30, 2023. The Plaintiff filed a second Notice of Appeal on December 22, 2022, in *Connolly v. Indiana*, 22A-CR-03050, which was dismissed with prejudice by the Indiana Court of Appeals on March 2, 2023. *See* Ex. H, ECF No. 52-10. In the criminal case, *Indiana v. Connolly*, 45D08-1808-F6-000673, the Plaintiff filed a Petition for Writ of Assistance on October 6, 2023, which was denied on June 10, 2024. On December 2, 2024, the Plaintiff filed a Rule 60(B)(8) motion, and on March 5, 2025, she filed a Motion for Relief from Judgment. On March 6, 2025, the state court issued an order denying the motions as lacking a legal basis for relief and writing, "The judgment shall stand."

---

[1] The state court dockets are available on mycase.IN.gov. The underlying criminal case, Cause Number 45D08-1808-F6-000673, was transferred to Cause Number 45D12-1808-F6-000673 on February 5, 2024.

6

## DISCUSSION

42 U.S.C. § 1983 "provides a remedy for violations of federal rights committed by persons acting under color of state law." *First Midwest Bank Guardian of Est. of LaPorta v. City of Chicago*, 988 F.3d 978, 986 (7th Cir. 2021). The Fourth Amendment to the United States Constitution "guarantees citizens the right to be secure in their persons against unreasonable seizures of the person." *Graham v. Connor*, 490 U.S. 386, 394 (1989) (cleaned up). The Plaintiff brings Fourth Amendment claims for arrest without probable cause and excessive force. The Court considers the Defendants' motion for summary judgment as to each count in turn.

**A.     Count I—Fourth Amendment Arrest Without Probable Cause**

In Count I, the Plaintiff alleges that the Defendants arrested her without probable cause in violation of the Fourth Amendment to the United States Constitution. "To prevail on a Fourth Amendment false-arrest claim, a plaintiff must show that there was no probable cause for [her] arrest." *Braun v. Village of Palatine*, 56 F.4th 542, 548 (7th Cir. 2022) (cleaned up). "Probable cause to make an arrest exists when a reasonable person confronted with the sum total of the facts known to the officer at the time of the arrest would conclude that the person arrested has committed a crime." *United States v. Brown*, 973 F.3d 667, 706 (7th Cir. 2020) (cleaned up). This "is a common-sense inquiry requiring only a probability of criminal activity." *Young v. City of Chicago*, 987 F.3d 641, 644 (7th Cir. 2021). "This is not a high bar." *Id.* (cleaned up). Probable cause is "assessed objectively based on the conclusions that the arresting officer reasonably might have drawn from the information known to him." *Id.* (cleaned up). "The officer['s] subjective intentions are irrelevant so long as there was probable cause to detain . . . for any crime." *Brown*, 973 F.3d at 706 (citing *Devenpeck v. Alford*, 543 U.S. 146, 154–55 (2004)).

Here, the Plaintiff was found guilty by a jury in Indiana state court of the charges of Battery on a Law Enforcement Officer, Resisting Law Enforcement, and Disorderly Conduct. The Defendants argue that the Plaintiff's § 1983 Fourth Amendment claim that she was arrested without probable cause is barred by *Heck v. Humphry* because a judgment in her favor would necessarily imply the invalidity of the three state criminal convictions. The Court agrees.

When a person convicted of a crime brings a § 1983 action for damages, "the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of [her] conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated" "by a state tribunal . . . or called into question by a federal court's issuance of a writ of habeas corpus." *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994). For § 1983 claims based on a Fourth Amendment violation, the Seventh Circuit Court of Appeals has recognized that "[m]any claims that concern how police conduct searches or arrests are compatible with a conviction." *Evans v. Poskon*, 603 F.3d 362, 363–64 (7th Cir. 2010); *see Pyles v. Strebing*, No. 24-1797, 2025 WL 2083900, at *2 (7th Cir. July 24, 2025) (quoting *Evans*, 603 F.3d at 363–64; citing *Wallace v. Kato*, 549 U.S. 384, 393–94 (2007)).

Nevertheless, "[t]here are narrow exceptions to this rule," *Pyles*, 2025 WL 2083900, at *2, which is the case here. "[A] § 1983 action is barred under *Heck* where the fact of a Fourth Amendment violation is an element of the offense of conviction." *Id.* (citing *Heck*, 512 U.S. at 486–87 n.6.). In *Heck*, the United States Supreme Court gave the example of a claim for damages for a violation of the Fourth Amendment right to be free from unreasonable seizure where the lawful arrest is an element of the underlying crime of resisting arrest. 512 U.S. at 486–87 n.6. In *Evans*, the Seventh Circuit found that the plaintiff's contention on his Fourth

8

Amendment claim "that he did not resist being taken into custody" was "incompatible with his conviction [for resisting arrest]; any proceedings based on this contention must be stayed or dismissed under *Wallace* or *Heck*." 603 F.3d at 364.

As an initial matter, the Plaintiff's state convictions for Battery on a Law Enforcement Officer, Resisting Law Enforcement, and Disorderly Conduct have not been set aside. Her appeal was denied with prejudice, and there is no indication that her convictions have been expunged by executive order, declared invalid by a state court, or called into question by a writ of habeas corpus. Those convictions were based on Officer Sulski's testimony that he and Officer Stickle were escorting the Plaintiff off the property when the Plaintiff turned, swung at Officer Sulski, shouldered him, tried to move past him, was flailing her arms, and fell to the ground. Officer Sulski testified that the Plaintiff "was on the ground cause she was going ballistic with her arms." Officer Stickle also testified that, after the Plaintiff pushed away from Officer Sulski and started swinging her arms around, Officer Stickle "grabbed her left arm" and she "still continued to swing her arms, lost her balance and fell on the ground." The Plaintiff did not testify at her criminal trial. However, in this civil case, the Plaintiff gave deposition testimony that, at the time she fell, she felt "a force that came at her" and that she did not push the officer trying to control her hands, push away from Officer Sulski or Officer Stickle, or resist law enforcement. The Plaintiff's contentions on this claim are incompatible with the facts underlying each criminal conviction and, thus, directly imply the invalidity of those convictions.

First, the Plaintiff was convicted of Level 6 Battery on a Law Enforcement Officer, the elements of which are "knowingly or intentionally . . . touch[ing] another person in a rude, insolent, or angry manner" and "[t]he offense is committed against a public safety official while the official is engaged in the official's duties." Ind. Code § 35-42-2-1(c)(1), (e)(2). A "public

9

safety official" includes "a law enforcement officer." *Id.* § 35-42-2-1(a)(1). The jury was instructed: "Before you may convict the Defendant, the State must have proved each of the following beyond a reasonable doubt: one, the Defendant; two, knowingly or intentionally; three, touched Officer . . . Sulski, another person; four, in a rude, insolent, or angry manner; five, when Officer Allen Sulski was a law enforcement officer engaged in his official duties." Ex. A, 236:15–21. The guilty verdict on this claim required the jury to find beyond a reasonable doubt that the Plaintiff touched Officer Sulski in a rude, insolent, or angry manner. Officer Sulski testified that the Plaintiff turned, shouldered him, attempted to move past him, and was flailing her arms. On her § 1983 claim, the Plaintiff contends that she did not push the Officers or resist.

Thus, the Plaintiff's version of the facts necessarily implies the invalidity of her conviction for Level 6 Battery on a Law Enforcement Officer. *See, e.g.*, *Wohlrabe v. Brown*, No. 24-CV-1321, 2025 WL 815573, at *2 (E.D. Wis. Mar. 13, 2025) (finding the § 1983 Fourth Amendment claim for arrest without probable cause was barred by *Heck* where the plaintiff had been "found guilty but not guilty due to mental disease of Wis. Stat. § 940.203(2), which prohibits causing bodily harm to a law enforcement officer in response to any action by the law enforcement officer and without the law enforcement officer's consent" and where, to prevail on his Fourth Amendment claim, the plaintiff "would have to show that he did *not* cause bodily harm to [to the officer] in response to [the officer's] actions"); *Fortman v. Hershberger*, No. 1:24-CV-389, 2025 WL 1546504, at *1, 3 (N.D. Ind. May 29, 2025) (noting that the plaintiff's assertion on a § 1983 Fourteenth Amendment claim that he accidentally bit an officer's finger while having a seizure directly undercut the validity of the criminal charge, which requires that the battery against a public safety officer be done knowingly or intentionally); *Tolliver v. City of Chicago*, 820 F.3d 237, 243 (7th Cir. 2016) (holding that the plaintiff's "version of the facts,"

which were that he acted involuntarily rather than with the requisite intent during his interaction with a peace officer, "implies the invalidity of his conviction for aggravated battery" such that the "civil claims are barred by *Heck*"); *Gordon v. Miller*, 528 F. App'x 673, 674 (7th Cir. 2013) (finding that, because the plaintiff was challenging his arrest on the basis that he never drove the vehicle, that proof would necessarily impugn the validity of the conviction that he drove the vehicle while intoxicated).

Second, the Plaintiff was convicted of the Class A misdemeanor of Resisting Law Enforcement, which "has five essential elements: that [the defendant] (1) knowingly or intentionally (2) forcibly (3) resisted, obstructed, or interfered with (4) a law enforcement officer, (5) while the officer was lawfully engaged in the execution of the officer's duties." *Jones v. State*, 247 N.E.3d 764, 2024 WL 4502026, at *2 (Ind. Ct. App. Oct. 16, 2024), *transfer denied*, 250 N.E.3d 1057 (Ind. 2025) (quoting *K.W. v. State*, 984 N.E.2d 610, 612 (Ind. 2013)). The jury in the Plaintiff's criminal case was instructed:

> Before you may convict the Defendant, the State must have proved each of the following: one, the Defendant; two, knowingly, intentionally; three, forcibly; four, resisted, obstructed or interfered with Officer Allen Sulski, a law enforcement officer, by refusing to leave the scene, was escorted, at which time she pushed this officer while the . . . officer was lawfully engaged in the execution of his duties as an officer.

Ex. A, 235:14–21. The guilty verdict on this claim required the jury to find beyond a reasonable doubt that the Plaintiff refused to leave the scene and pushed Officer Sulski. On her § 1983 claim, the Plaintiff testified that she did not refuse to leave the scene and did not push the officers. Thus, the Plaintiff's version of the facts necessarily implies the invalidity of her conviction for Resisting Law Enforcement. *See Evans*, 603 F.3d at 364 (finding the plaintiff's contention on the Fourth Amendment claim "that he did not resist being taken into custody" was "incompatible with his conviction" for resisting arrest and must be dismissed under *Heck*); *Eve v.*

11

*Burtron*, No. 1:21-CV-1721, 2023 WL 8543747, at *6 (S.D. Ind. Dec. 11, 2023) (holding that the plaintiff, who had been convicted of resisting law enforcement, was barred by *Heck* from asserting her § 1983 claim that the officers did not have probable cause for their actions).

Finally, the Plaintiff was convicted of the Class B misdemeanor of Disorderly Conduct. "A person who recklessly, knowingly, or intentionally . . . engages in fighting or in tumultuous conduct" commits disorderly conduct. Ind. Code § 35-45-1-3(a)(1). Conduct is "tumultuous" if it "results in, or is likely to result in, serious bodily injury to a person or substantial damage to property." Ind. Code § 35-45-1-1. The jury was instructed: "Before you may convict the Defendant, the State must have proved each of the following beyond a reasonable doubt: one, the Defendant; two recklessly, knowingly or intentionally; three, engaged in tumultuous conduct; four, that is likely to result in serious bodily injury." Ex. A, 237:9–14. The jury was also instructed on the statutory definition of "tumultuous conduct." *See id.* 237:23–25. Thus, the guilty verdict on this claim required the jury to find beyond a reasonable doubt that the Plaintiff engaged in tumultuous conduct, which would have been based on Officer Sulski's testimony that, while the Plaintiff was being escorted down the driveway, she turned, swung at him, shouldered him, and was flailing her arms. On her § 1983 claim, the Plaintiff testified that she did not push the officer who was trying to control her hands, did not push away from Officer Sulski or Officer Stickle, and did not resist the Officers. Thus, the Plaintiff's version of the facts necessarily implies the invalidity of her conviction for Disorderly Conduct. *See Brookshire v. Elkhart City Police*, No. 3:20-CV-648, 2021 WL 5304002, at *3 (N.D. Ind. Nov. 15, 2021) (finding the plaintiff's claims of false arrest and false imprisonment were barred by *Heck* based on her criminal convictions for resisting law enforcement and disorderly conduct).

Because the Plaintiff's contentions in this case that she was arrested without probable cause necessarily impugn the validity of her guilty verdicts, this § 1983 Fourth Amendment claim is barred by *Heck*. *See Okoro v. Callaghan*, 324 F.3d 488, 489 (7th Cir. 2003). Thus, the Court grants summary judgment for the Defendants and against the Plaintiff on the Fourth Amendment claim in Count I for arrest without probable cause and does not reach the Defendants' alternative arguments based on issue preclusion and qualified immunity.

**B.     Count II—Fourth Amendment Excessive Force**

In Count II, the Plaintiff alleges that the Defendants used excessive force in violation of the Fourth Amendment when Officer Sulski placed handcuffs on the Plaintiff too tightly and when both Defendants slammed the Plaintiff into the side of a vehicle, causing her to hit her face and fall to the ground. The Defendants argue that the excessive force claims fail as a matter of law because the Defendants' action were reasonable and that dismissal is appropriate under *Heck v. Humphrey*.

"The Fourth Amendment prohibits the use of excessive force to seize a person in order to arrest her." *Gupta v. Melloh*, 19 F.4th 990, 995–96 (7th Cir. 2021). A Fourth Amendment excessive force claim is governed by the objective reasonableness standard. *Brumitt v. Smith*, 102 F.4th 444, 447 (7th Cir. 2024) (citing *Plumhoff v. Rickard*, 572 U.S. 765, 774 (2014)). Whether an officer's use of force is objectively reasonable depends on the totality of the circumstances, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [she] is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. Summary judgment in excessive forces cases is often denied because "parties typically tell different stories about what happened." *Catlin v. City of Wheaton*, 574 F.3d 361, 367 (7th Cir. 2009). For purposes of the

*Heck* analysis, "there is nothing inherently contradictory about [a guilty verdict for battery on a law enforcement officer] and bringing a claim of excessive force." *Tolliver*, 820 F.3d at 243. "But if the plaintiff's factual claims in the civil suit necessarily imply the invalidity of the criminal conviction, then *Heck* bars the civil suit." *Id.*

      First, the Court considers the Plaintiff's § 1983 excessive force claim based on the Officers allegedly knocking her against the truck, causing her to fall, and finds it is barred by *Heck*. A finding for the Plaintiff on this claim based on her version of the facts would necessarily imply the invalidity of her conviction for Level 6 Battery on a Law Enforcement Officer. At the outset, the Plaintiff's and the Defendants' stories are consistent in that both contend the Plaintiff was walking away from the scene of the investigation, was not being touched by an officer, and was about halfway down the driveway when she fell. The part of the Plaintiff's version that differs, based on her deposition testimony, is that while she was walking down the driveway, she was suddenly knocked into a parked truck after she felt "a force" behind her. And she denies pushing either Officer. The Officers' differing version of the events—presented as testimony at the jury trial—was that, as she was walking down the driveway, the Plaintiff turned, swung at Officer Sulski, shouldered him, tried to move past him, was flailing her arms, and fell as a result.

      As discussed in detail above, one of the necessary findings beyond a reasonable doubt by the jury on each of the three convictions was that the Plaintiff turned and pushed one or both Officers. In the Plaintiff's version, there is no possibility that she touched, much less pushed, either Officer before suddenly feeling "a force" behind her and then falling to the ground. If the fact finder in this civil case were to accept the Plaintiff's version of the events, then the Officers pushed the Plaintiff without provocation. As a result, this § 1983 excessive force claim is barred by *Heck* because the Plaintiff's version of the facts necessarily implies the invalidity of her

conviction for Battery on a Law Enforcement Officer. *See Tolliver*, 820 F.3d at 243 (holding that the plaintiff's § 1983 excessive force claim was barred by *Heck* because finding for the plaintiff would negate the mental status requirement for an aggravated battery, necessarily implying the invalidity of his prior conviction for aggravated battery of a peace officer); *Soriano v. Town of Cicero*, No. 06 C 774, 2010 WL 3418260, at *4 (N.D. Ill. Aug. 25, 2010) ("If the jury in the civil suit found that Soriano did not strike Officer Stroud and that he posed no threat to anyone, they would necessarily imply the invalidity of Soriano's criminal conviction, violating *Heck*.").

Second, the Complaint alleges that the Defendants "placed the handcuffs on Plaintiff too tight, causing pain and injuries to the Plaintiff," that "Plaintiff did not resist or otherwise try to escape that would give the Defendants'[sic] justification for excessively tightening the handcuffs," and that "Plaintiff pleaded with Defendants to loosen the handcuffs and the Defendants ignored the requests." Compl. ¶¶ 24, 28, 29. An excessive force claim may be based on unreasonably tight handcuffs. *See Tibbs v. City of Chicago*, 469 F.3d 661, 666 (7th Cir. 2006); *see also Rooni v. Biser*, 742 F.3d 737, 742 (7th Cir. 2014) ("A person has the right to be free from an officer's knowing use of handcuffs in a way that would inflict unnecessary pain or injury, if that person presents little or no risk of flight or threat of injury."). However, a plaintiff must offer evidence of more than discomfort and pain from tight handcuffs to survive summary judgment. *See Tibbs*, 469 F.3d at 666 (finding that no reasonable jury could find for the plaintiff "based on such mild allegations" where the plaintiff offered evidence that he complained to the officer "once about his handcuffs without elaborating on any injury, numbness, or degree of pain," he "was handcuffed for about twenty-five to thirty minutes," "he experienced redness on his wrists for less than two days," and "he neither sought nor received medical care for any alleged wrist injury").

The Defendants move for summary judgment on the basis that there is no evidence that the Plaintiff's arrest was effected in an unusual or improper manner. *See Braun v. Baldwin*, 346 F.3d 761, 762–63 (7th Cir. 2003) (affirming summary judgment for the defendant on an excessive force claim based on being handcuffed too tightly because "there [was] no indication [the plaintiff's] arrest was effected in an unusual or improper manner, [and thus] the excessive force claim has no possible merit"). To support the reasonableness of their decision to handcuff the Plaintiff at the scene, the Defendants cite Officer Sulski's testimony at the criminal trial that, as they were walking down the driveway, the Plaintiff turned, shouldered Officer Sulski, and was flailing her arms. In this civil case, the Plaintiff testified at her deposition that she did not push the Officers or resist. However, as discussed above, because the Plaintiff's version of the facts necessarily implies the invalidity of her three criminal convictions, an excessive force claim relying on the same facts to dispute the reasonableness of Officer Sulski's conduct in handcuffing her is barred by *Heck v. Humphrey*. The Plaintiff did not respond to this motion and thus has offered no argument or evidence in support of her claim that the handcuffs were too tight. *See Peirick v. Dudek*, No. 20 CV 3013, 2022 WL 3226965, at *6–7 (N.D. Ill. Aug. 10, 2022) (granting summary judgment where there was no "indication that [the plaintiff's] arrest was effected in an unusual or improper manner" when there was no dispute that the officer had lawful authority to arrest the plaintiff for the speeding violation; during the fifteen minutes he was handcuffed, the plaintiff complained that the handcuffs were too tight, uncomfortable, and causing pain; the plaintiff offered photos taken when he got home from the station showing a small red mark on his right wrist; the plaintiff offered no evidence of short- or long-term wrist injury; and the plaintiff received no relevant medical care (quoting *Tibbs*, 469 F.3d at 666; *Sow v. Fortville Police Dep't*, 636 F.3d 293, 304 (7th Cir. 2011); *Braun*, 346 F.3d at 763)).

Accordingly, the Court grants summary judgment for the Defendants and against the Plaintiff on the § 1983 Fourth Amendment excessive force claim in Count II. The Court does not reach the Defendants' alternative issue preclusion and qualified immunity arguments.

## CONCLUSION

For these reasons, the Court GRANTS the Defendants' Motion for Summary Ruling on Motion for Summary Judgment and GRANTS the Defendants' Motion for Summary Judgment [ECF No. 51], granting summary judgment for Defendants Officer Sulski Unit CL 41 and Officer Stickle Unit CL 48 and against Plaintiff Noreen Connolly. The Court DIRECTS the Clerk of Court to ENTER JUDGMENT for Officer Sulski Unit CL 41 and Officer Stickle Unit CL 48 and against Plaintiff Noreen Connolly on both counts of the Plaintiff's Complaint. The Plaintiff Noreen Connolly takes nothing by her Complaint.

So ORDERED on August 11, 2025.

s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT